UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

(FILED ELECTRONICALLY)


CIVIL ACTION NO.  5:18-cv-154-TBR


UNITED STATES OF AMERICA                                            PLAINTIFF

vs.


BRANDON L. COOKE                                                DEFENDANTS
4501 State Route 70
Fredonia, KY 42411


## COMPLAINT


Plaintiff, the United States of America, states as follows:

1.      This is an action to collect a debt owed to United States of America through its

agency, the Department of Agriculture, Farm Service Agency ("FSA").

2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial

division.

3.      Defendant **Brandon L. Cooke, also known as Brandon Lynne Cooke,** (the

"Borrower") executed and delivered to FSA, for valuable consideration, the following

promissory notes, among others:

| Loan No. | Amount of Note | Annual Interest | Date of Note | Exhibit |
|---|---|---|---|---|
| 44-01 | $ 45,000.00 | 1.250% | 08/27/2012 | A |
| 44-02 | $ 90,000.00 | 2.500% | 02/29/2016 | B |
| 44-03 | $ 21,000.00 | 2.500% | 02/29/2016 | C |

Copies of these promissory notes are attached as **Exhibits A, B,** and **C** and are incorporated by reference as though set forth fully herein.

4.      To secure repayment of promissory notes 44-01, 02, and 03 described in paragraph 3 of this Complaint, on August 27, 2012, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in Borrower's livestock and machinery as described in more detail in security agreement ("Collateral").  A copy of the Security Agreement between the Borrower and FSA is attached as **Exhibit D** and is incorporated by reference as if set forth fully herein.

5.      To further secure repayment of promissory notes 44-01, 02, and 03 described in paragraph 3 of this Complaint, on February 29, 2016, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in Borrower's livestock and machinery described in more detail in the security agreements ("Collateral").  A copy of this Security Agreement between the Borrower and FSA is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

6.      To further secure repayment of promissory notes 44-01, 02, and 03  described in paragraph 3 of this Complaint, on May 12, 2016, the Borrower executed and delivered to FSA a security agreement granting FSA security interests in all Borrower's livestock and machinery described in more detail in the security agreement ("Collateral").  A copy of the Security Agreement between the Borrower and FSA is attached as **Exhibit F** and incorporated by reference as if set forth fully herein.

7.      To perfect its security interest in the Collateral described in the security agreements with the Borrower, FSA filed UCC Financing Statements with the Kentucky Secretary of State as follows:

| Document Number | Filing Date | Exhibit |
| --- | --- | --- |

| | | |
|---|---|---|
| 2012-2597129-60 | 08/22/2012 | **G** |
| 2016-2816336-18 | 03/01/2016 | **H** |

Subsequent to filing these UCC Financing Statements, FSA filed continuation statements for each Financing Statement with the Kentucky Secretary of State.

8.  Pursuant to the terms of the Security Agreements, if Borrower defaults on the underlying promissory notes, then FSA, at its option, enter onto premises and take possession of the collateral and exercise any sale or other rights afforded to FSA.  Furthermore, by executing the Security Agreements, Borrower agreed to assemble the collateral and make it available to FSA upon default. The Security Agreements also permit the United States to recover all costs associated with the preservation and protection of the collateral and to deduct all costs incurred during the collection and disposition of the collateral from the sale proceeds.

9.  The Borrower is obligated to pay the United States under the Notes and the Borrower has defaulted under the terms of the Promissory Notes and Security Agreements by failing to make payments when due.

10.  As a result of Borrower's default, FSA has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, FSA sent notice to the Borrower of the default and acceleration of the loan.

11.  There remains due and payable on the Borrower's loans as follows:

| Loan No. | Principal Balance | Interest as of 7/11/17 | Daily Accrual Rate |
|---|---|---|---|
| 44-01 | $ 26,234.41 | $    907.42 | $  .8984 |
| 44-02 | $ 90,000.00 | $ 5,609.60 | $ 6.1644 |
| 44-03 | $ 19,900.00 | $ 1,249.89 | $ 1.3630 |
| 44-99 | $      600.00 | $        1.36 | $  .0205 |
| | | | |
| TOTAL | $136,734.41 | $ 7,768.27 | $ 8.4463 |

12.     The total amount owed by the Borrower on all promissory notes as of September 6, 2018 is $136,734.41 in principal, plus interest of $7,768.27, for a total amount of $144,502.68. Interest continues to accrue on the notes at the daily accrual rates set forth in Paragraph 3 of the Complaint above.

13.     Due to Borrower's default on the Notes and Security Agreements, the United States is entitled to all the remedies provided under the security agreements, including, without limitation, (a) enforcement of all rights against the Collateral as set forth in Kentucky's Uniform Commercial Code; (b) requiring the Borrower to assemble and make the Collateral available at a location determined by FSA; (c) selling the Collateral at a private or public sale; and (d) allowing the United States to enter any premises where the Collateral is located to take possession of, take control of, and remove the Collateral.  The United States is also entitled to enforce its security interest in the Collateral and sell the Collateral to satisfy any judgment entered in favor of the United States.

14.     This Collateral subject to FSA's perfected security interest includes the following Livestock, used or produced for commercial purposes,. now owned or hereafter acquired by the Defendant, together with all increases, replacements, substitutions, and additions thereto, including but not limited to  the following located in the State of Kentucky::

| Line No. | Quantity | Kind-Sex |
| --- | --- | --- |
| 1 | 1 | Cattle – Beef – Breeding Bulls |
| 2 | 36 | Cattle – Beef – Breeding Cows |
| 3 | 2 | Cattle – Beef – |

|   |    | Breeding Bulls |
|---|----|----------------|
| 4 | 30 | Cattle – Beef – Breeding Cows |

15.   The Collateral subject to FSA's perfected security interest includes the following

Farm and Other Equipment:

| Line No. | Quantity | Description | Manufacturer | Size and Type | Condition | Year | Serial or Model No. |
|----------|----------|-------------|--------------|---------------|-----------|------|---------------------|
| 1 | 1 | Hay Cutter | Holland | 7 Ft | Average | 2006 | 620078 |
| 3 | 1 | Disc | Krouse | 32-Ft | Average | | |
| 4 | 1 | Field Cultivator | John Deere | 32-Ft | Average | | |
| 5 | 1 | Roller | John Deere | | Average | | |
| 6 | 1 | Stock Trailer | | 16 Ft Bumper Hitch | Average | | |
| 7 | 1 | Stock Trailer | Gooseneck | 25 Ft Gooseneck | Average | | |
| 8 | 1 | Trailer | Birmingham | 25 Ton Pintle Hitch | Average | 1988 | |
| 9 | 1 | Utility Vehicle | Polaris | | Good | | |
| 11 | 1 | Planter | Black Machine | 1213 12 row Corn 13row Soybeans | Average | | 3321758 |
| 12 | 1 | Tractor | John Deere | 3040 MFWA w/ cab | Average | 1985 | RP2023C0F0 100 |
| 13 | 1 | Tractor | Steiger | 4wd Bearcat | Average | 1980 | |

16.     The United States also seeks a personal judgment against the Borrower for the amount owed, plus interests and costs as allowed by law.

17.     There are no other persons or entities purporting to have an interest in the Collateral known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     Judgment against the interests of the Borrower in the Collateral in the principal amount of $136,734.41, plus $7,768.27 interest as of September 6, 2018, for a total unpaid balance due of $144,502.68 as of September 6, 2018, with interest accruing at the daily rate of $8.4463 from September 6, 2018, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.     That the United States be adjudged a lien on the Collateral, prior and superior to any and all other liens, claims, interests and demands;

c.     That the United States' liens be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.     That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.     For judgment allowing the United States to take possession of all Collateral and sell, lease or otherwise dispose of the collateral at public or private sale, with or without advertisement;

f.      For personal judgment against the Borrower for the amount owed, plus interests

and costs; and

g.      That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney

s/ William F. Campbell
Katherine A. Bell
William F. Campbell
Assistant U.S. Attorneys
717 West Broadway
Louisville, KY  40202
Phone:  502/582-5911
Fax:    502/625-7110
katherine.bell@usdoj.gov
bill.campbell@usdoj.gov

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-07-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name BRANDON LYNN COOKE | 2. State KENTUCKY | 3. County CALDWELL |
|---|---|---|
| 4. Case Number 20-17-▮▮▮▮ | 5. Fund Code 44 | 6. Loan Number 01 | 7. Date AUGUST 27, 2012 |

8. TYPE OF ASSISTANCE
211-OL-BF-REG- 7 YR

9. ACTION REQUIRING PROMISSORY NOTE:

- [x] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)*  HOPKINSVILLE, KENTUCKY  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  FORTY-FIVE THOUSAND AND NO/100--------------------------------- -------------------------------- dollars *(c)* ($  45,000.00 , plus interest on the unpaid principal balance at the **RATE** of *(d)* ONE AND ONE-FOURTH

percent *(e)*  1.250 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  7  installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 6,755.00 | 11/01/2013 | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |
| $ NA | | $ NA | |

and *(d)* $  6,755.00  thereafter on the *(e)* 1ST OF NOVEMBER  of each *(f)* YEAR  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN  years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).   To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

Initial  BLC    Date  8/27/12

Exhibit A

advanced or expended by the Government for the collection of this note or to preserve or protect any security for the
.. .ise expended under the terms of any security agreement or other instrument executed in connection with the loan
.y this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the
..enced by this note and be immediately due and payable by the Borrower to the Government without demand.

..very payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or
..y successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the
Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this
note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be
leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless
the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to
consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or
assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not
affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in
effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced
by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative
or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the
Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay
for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the
Borrower as a nonprogram loan or a Conservation Loan.

ial _BLK_____   Date 8/22/12

FSA-2026 (09-07-10).

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.


*Brandon Lynn Cooke*
_____
BRANDON LYNN COOKE          (Borrower)

4501 St. Rte. 760
Fredonia, KY 42411

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

**FSA-2026**
(12-05-12)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>Brandon Lynn Cooke | 2. State<br>KENTUCKY | 3. County<br>Caldwell |
|---|---|---|
| 4. Case Number<br>20-017-████ | 5. Fund Code<br>44 | 6. Loan Number<br>02 | 7. Date<br>February 29, 2016 |

| 8. TYPE OF ASSISTANCE<br>OL-BF-Reg-7YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [ ] Initial loan
- [ ] Consolidation
- [x] Subsequent loan
- [ ] Conservation easement
- [ ] Rescheduling
- [ ] Reamortization
- [ ] Deferred payments
- [ ] Debt write down

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* HOPKINSVILLE, KY 42240------------- or at such other place as the Government may later designate in writing, the principal sum of *(b)* NINETY THOUSAND AND 00/100------ ------------------------------- dollars *(c)* ($ 90,000.00------------------------- , plus interest on the unpaid principal balance at the **RATE** of *(d)* TWO AND ONE HALF---------------------------------------- percent *(e)* 2.500--- %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* SEVEN (7)--------------------------------------------------------- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 14,175.00--- | 4-1-17 | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |

and *(d)* $ 14,175.00--- thereafter on the *(e)* 1ST OF April of each *(f)* YEAR------ until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN (7)------- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _BLC_ Date _2/26/16_

Exhibit B

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _BLC_       Date _2/29/16_

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that ~~will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as~~ provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_Brandon Cooke_ _____ (SEAL)
Brandon Lynn Cooke          (Borrower)


4501 State route 70
Fredonia, KY 42411


_2/27/16_ _____
                DATE

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 | | |
|---|---|---|
| (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 2 |

## PROMISSORY NOTE

| 1. Name<br>Brandon Lynn Cooke | 2. State<br><br>KENTUCKY | 3. County<br>Caldwell |
|---|---|---|

| 4. Case Number<br>20-017- | 5. Fund Code<br>44 | 6. Loan Number<br>03 | 7. Date<br>February 29, 2016 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE<br><br>OL-BF-Reg-7YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan  ☐ Conservation easement  ☐ Deferred payments

☐ Consolidation  ☐ Rescheduling  ☐ Debt write down

☒ Subsequent loan  ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* HOPKINSVILLE, KY 42240------------- or at such other place as the Government may later designate in writing, the principal sum of *(b)* TWENTY ONE THOUSAND AND 00/100------ -------------------------------- dollars *(c)* ($ 21,000.00------------------------- , plus interest on the unpaid principal balance at the **RATE** of *(d)* TWO AND ONE HALF------------------------------------- percent *(e)* 2.500--- %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* SEVEN (7)------------------------------------------------- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 3308.00----- | 4-1-17 | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |

and *(d)* $ 3308.00----- thereafter on the *(e)* 1ST OF April of each *(f)* YEAR------ until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* SEVEN (7)------- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial *BLC* Date *2/29/16*

Exhibit C

**FSA-2026** (12-05-12)                                                                                                    Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _ALC_       Date _2/24/16_

FSA-2026 (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**



Brandon Lynn Cooke

(SEAL)
(Borrower)

4501 State route 70
Fredonia, KY 42411

2/29/16
DATE

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

This form is available electronically.

| FSA-2425 | U.S. DEPARTMENT OF AGRICULTURE | Form Approved – OMB No. 0550-0236 |
|---|---|---|
| (01-16-08) | Farm Service Agency | Position 2 |

# REQUEST TO CANCEL UNDISBURSED LOAN FUNDS

## PART A - BORROWER'S REQUEST

| 1. Borrower's Exact Full Legal Name | 2. Address |
|---|---|
| Brandon Lynn Cooke | 4501 State Route 70<br>Fredonia, KY 42411 |

I request the remaining undisbursed loan balance be cancelled and authorize the United States, acting through the U.S. Department of Agriculture, Farm Service Agency to deduct the unused amount (3) $ 1,100.00 from the principal balance on loan number (4) 44-03 , dated (5) 3-2-2016

| 6. Signature | 7. Date |
|---|---|
| | 10/10/17 |

## PART B - FSA APPROVAL

NOTE:  FSA-2072, must be attached to signed FSA-2425.

| 8. FSA's Decision: | ☐ Approved | ☐ Disapproved |
|---|---|---|

| 9. Name | 10. Title |
|---|---|
| Mary Beth Tomica | Farm Loan Officer |

| 11. Signature | 12. Date |
|---|---|
| | |

| 13. Original Amount | 14. Cancelled Amount |
|---|---|
| $ 21,000.00 | $ 1,100.00 |

NOTE:   *The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 USC 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service the loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0236. The time required to complete this information collection is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.*

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements).*

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| (09-03-10) | Farm Service Agency | |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)*_____**August 27, 2012**_____ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____

**BRANDON LYNN COOKE**_____

(Debtor), whose mailing address is (c)_____
**4501 STATE ROUTE 70, FREDONIA, KY 42411-9670**

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial  BLC      Date  8/27/12

Exhibit D

FSA-2028 (09-03-10)

(b)   All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| 1968 Jack Jones | 149 | CALDWELL, KY | 1 1/4 Mi Flat Rock Rd off Hwy 70 |
| 3641 Kenneth & Betty Winn | 116 | CALDWELL, KY | 3/4 Mi Flat Rock Rd off Hwy 70 |
| 3704 Rondall Cooke | 298 | CALDWELL, KY | 1 Mi So Glenn Ferry Rd 5 1/2 Mi from Hwy 70 |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _BLC_   Date _8/27/12_

**FSA-2028** (09-03-10)

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___Kentucky___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | John Deere | 3040 MFWA w/ Cab | Average | 1985 | RP2023C0F0100 |
| 2 | 1 | Hay Cutter | New Holland | 7FT | Average | 2006 | 620078 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial __ΘhC__    Date __6/27/12__

**FSA-2028** (09-03-10)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* ___Kentucky___ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Cattle - Beef - Breeding Bulls | | | | | |
| 2 | 42 | Cattle - Beef - Breeding Cows | | | | | |

Initial _BLC_ Date _8/27/12_

(e)   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER SOURCE DERIVED, INCLUDING BUT NOT LIMITED TO ALL FSA, CCC, DAIRY TERMINATION, FCIC INSURANCE, PIK COMMODITY CERTIFICATES, AND SET OFF PROCEEDS, AND TTPP PAYMENTS.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)   Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)   Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)   Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)   Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)   Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)   All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)   In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _BLC_   Date _8/27/12_

FSA-2028 (09-03-10)

4. **IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _BLL_   Date _8/27/12_

**FSA-2028** (09-03-10)

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. *Brandon Lynn Cooke*
BRANDON LYNN COOKE

6B. *(Date)*  8/27/12

_____
*Debtor*

*(Date)* _____

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).*

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | |
|---|---|---|
| (11-12-14) | Farm Service Agency | Position 1 |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __February 29__ , 2016 _____ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)* **BRANDON LYNN COOKE,**

(Debtor), whose mailing address is *(c)* 4501 STATE ROUTE 70, FREDONIA, KY 42411-9670

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial *BLC* Date *2/29/16*

Exhibit E

FSA-2028 (11-12-14)

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| 3641 Kenneth & Betty Winn | 206 | CALDWELL, KY | 3/4 Mi Flat Rock Rd off Hwy 70 |
| 3704 Rondall Cooke | 298 | CALDWELL, KY | 1 Mi So Glenn Ferry Rd 5 1/2 Mi from Hwy 70 |
| 1385 Ethelene Fraley | 38 | CALDWELL, KY | 3 Mi EHwy70 East to Good Springs |
| 3342 Caldwell, KY | 26 | CALDWELL, KY | 2 Mi So of Hwy 70 0n Donaldson Church Rd |
| 4284 Caldwell, KY | 156 | CALDWELL, KY | 2 Mi So of Hwy 70 on Donaldson Church Rd |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *BLC* Date 2/29/16

FSA-2028 (11-12-14)

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* ___KENTUCKY___

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Hay Cutter | New Holland | 7FT | Average | | |
| 2 | 1 | Dozer Blade | | for Steiger Bearcat Tractor | Average | 2006 | 620078 |
| 3 | 1 | Disc | Krouse | 32-Ft | Average | | |
| 4 | 1 | Field Cultivator | John Deere | 32-Ft | Average | | |
| 5 | 1 | Roller | John Deere | | Average | | |
| 6 | 1 | Grain Cart | J&M | 750 | Average | | |
| 7 | 1 | Grain Cart | Kilbros | Model 490 | Average | 1990 | |
| 8 | 1 | Stock Trailer | | 16Ft Bumper Hitch | Average | | |
| 9 | 1 | Stock Trailer | Gooseneck | 25Ft Gooseneck | Average | | |
| 10 | 1 | Header Trailer | J&M | 25Ft | Average | | |
| 11 | 1 | Trailer | Birmingham | 25Ton Pintle Hitch | Average | 1988 | |
| 12 | 1 | Utility Vehicle | Polaris | | Good | 2014 | 3NSJT9EA5EF385161 |
| 13 | *1 | Bush-Hog | Bush-Hog | #3715 15-Ft | Average | | 12-00655 |
| 14 | | *Prior Lien Farm Credit | | | | | |
| 15 | 1 | Combine | John Deere | 8820 | Average | 1989 | |
| 16 | 1 | Flex Bean Header | John Deere | 925 25-Ft | Average | | |
| 17 | 1 | Corn Header | John Deere | 843 8-Row | Average | | |
| 18 | 1 | Combine | John Deere | 7720 | Average | 1978 | |
| 19 | 1 | Planter | Black Machine | 1213 12rowCorn, 13rowSoybeans | Average | | 3321758 |
| 20 | 1 | Tractor | John Deere | 3040 MFWA w/ Cab | Average | 1985 | RP2023C0F0100 |
| 21 | 1 | Tractor | Steiger | 4wd Bearcat | Average | 1980 | |
| 22 | 1 | Tractor | International | 1466 | Average | 1980 | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial *RLC*   Date *2/29/06*

FSA-2028 (11-12-14)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

_____KENTUCKY_____

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Beef - Breeding Bulls | | | | | |
| 2 | 36 | Cattle - Beef - Breeding Cows | | | | | |
| 3 | 2 | Cattle - Beef - Breeding Bulls | | | | | |
| 4 | 30 | Cattle - Beef - Breeding Cows | | | | | |

Initial *BLC*  Date *2/27/16*

**FSA-2028** (11-12-14)

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER SOURCE DERIVED, INCLUDING BUT NOT LIMITED TO ALL FSA, CCC, FCIC INSURANCE, AND SET OFF PROCEEDS, AND TTPP PAYMENTS.

<?xml:namespace prefix = "o" ns = "urn:schemas-microsoft-com:office:office" />

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial *RLC*  Date *2/29/16*

FSA-2028 (11-12-14)

Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial *BCC*  Date *2/24/16*

**FSA-2028** (11-12-14)

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2. (c) or (d) with an asterisk*.

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____

BRANDON LYNN COOKE

6B. *(Date)* ___2/29/16___

_____

Debtor

*(Date)* _____

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).

| FSA-2028 (02-01-16) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 1 |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated (a) __May 12__ , __2016__ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) __BRANDON LYNN COOKE,__

(Debtor), whose mailing address is (c) __4501 STATE ROUTE 70, FREDONIA, KY 42411-9670__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and (1) to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; (2) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and (3) the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**MICROLOANS ONLY. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral as indicated with (m). For the microloan collateral involving equipment and livestock, Secured Party acknowledges that it is taking a security interest in the specifically listed equipment or livestock and all replacements or substitutions. For microloan crop collateral, Secured Party acknowledges that it is taking a security interest in the specific crop, inventory, accounts and contract rights, crop indemnity payments, all entitlements, benefits, and payments from State and Federal farm programs, and deposit amounts arising out of the Debtor's operation or ownership of that crop. Any after acquired provisions in this Security Agreement do not apply to microloan collateral unless the loan is serviced pursuant to 7 C.F.R. part 766. PLEASE NOTE: This provision shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein for all other loans:

**ALL OTHER LOANS. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein (a):

Initial __BLC__ Date __5/12/16__

Exhibit F

FSA-2028 (02-01-16)

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| 3641 Kenneth & Betty Winn | 206 | CALDWELL, KY | 3/4 Mi Flat Rock Rd off Hwy 70 |
| 3704 Rondall Cooke | 298 | CALDWELL, KY | 1 Mi So Glenn Ferry Rd 5 1/2 Mi from Hwy 70 |
| 1385 Ethelene Fraley | 38 | CALDWELL, KY | 3 Mi E Hwy70 East to Good Springs |
| 3342 Caldwell, KY | 26 | CALDWELL, KY | 2 Mi So of Hwy 70 0n Donaldson Church Rd |
| 4284 Caldwell, KY | 156 | CALDWELL, KY | 2 Mi So of Hwy 70 on Donaldson Church Rd |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *BLc* Date *6/14/16*

FSA-2028 (02-01-16)

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*

___KENTUCKY___

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Hay Cutter | New Holland | 7FT | Average | 2006 | 620078 |
| 2 | 1 | Dozer Blade | | for Stelger Bearcat Tractor | Average | | |
| 3 | 1 | Disc | Krouse | 32-Ft | Average | | |
| 4 | 1 | Field Cultivator | John Deere | 32-Ft | Average | | |
| 5 | 1 | Roller | John Deere | | Average | | |
| 6 | 1 | Grain Cart | J&M | 750 | Average | | |
| 7 | 1 | Grain Cart | Kilbros | Model 490 | Average | 1990 | |
| 8 | 1 | Stock Trailer | | 16Ft Bumper Hitch | Average | | |
| 9 | 1 | Stock Trailer | Gooseneck | 25Ft Gooseneck | Average | | |
| 10 | 1 | Header Trailer | J&M | 25Ft | Average | | |
| 11 | 1 | Trailer | Birmingham | 25Ton Pintle Hitch | Average | 1988 | |
| 12 | 1 | Utility Vehicle | Polaris | | Good | 2014 | 3NSJT9EA5EF385161 |
| 13 | *1 | Bush-Hog | Bush-Hog | #3715 15-Ft | Average | | 12-00655 |
| 14 | | *Prior Lien Farm Credit | | | | | |
| 15 | 1 | Combine | John Deere | 8820 | Average | 1989 | |
| 16 | 1 | Flex Bean Header | John Deere | 925 25-Ft | Average | | |
| 17 | 1 | Corn Header | John Deere | 843 8-Row | Average | | |
| 18 | 1 | Combine | John Deere | 7720 | Average | 1978 | |
| 19 | 1 | Planter | Black Machine | 1213 12rowCorn, 13rowSoybeans | Average | | 3321758 |
| 20 | 1 | Tractor | John Deere | 3040 MFWA w/ Cab | Average | 1985 | RP2023C0F0100 |
| 21 | 1 | Tractor | Stelger | 4wd Bearcat | Average | 1980 | |
| 22 | 1 | Tractor | International | 1466 | Average | 1980 | |

(10)Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _BLC_ Date _5/12/16_

FSA-2028 (02-01-16)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

KENTUCKY

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Beef - Breeding Bulls | | | | | |
| 2 | 36 | Cattle - Beef - Breeding Cows | | | | | |
| 3 | 2 | Cattle - Beef - Breeding Bulls | | | | | |
| 4 | 30 | Cattle - Beef - Breeding Cows | | | | | |

Initial _BLC_ Date _5/12/16_

FSA-2028 (02-01-16)

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

ALL FEDERAL SUBSIDY ENTITLEMENTS IN WHATEVER FORM AND FROM WHATEVER SOURCE DERIVED, INCLUDING BUT NOT LIMITED TO ALL FSA, CCC, FCIC INSURANCE, AND SET OFF PROCEEDS, AND TTPP PAYMENTS.

<?xml:namespace prefix = "o" ns = "urn:schemas-microsoft-com:office:office" />

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; (2) any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced; (2) comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; (3) care for and maintain collateral in a good and husbandlike manner; (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; (5) permit Secured Party to inspect the collateral at any reasonable time; (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all (1) indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and (4) fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _BLC_  Date _5/11/16_

FSA-2028 (02-01-16)

**4. IT IS FURTHER AGREED THAT:**

(a)  Until default, Debtor may retain possession of the collateral.

(b)  **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial  _BLC_  Date _5/12/16_

FSA-2028 (02-01-18)

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2 with an asterisk*.

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

Initial *PLC*   Date *5/12/18*

FSA-2028 (02-01-16)

Page 8 of 8

6A. _[signature]_                                    6B. (Date)  5/12/16
BRANDON LYNN COOKE

_____                              (Date) _____
Debtor

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at http://www.ascr.usda.gov/complaint_filing_cust.html and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) Mail: U.S. Department of Agriculture Office of the Assistant Secretary for Civil Rights 1400 Independence Avenue, SW Washington, D.C. 20250-9410; (2) Fax: (202) 690-7442; or (3) email: program.intake@usda.gov.

## UCC FINANCING STATEMENT

Name and address of filer:

Farm Service Agency
3237 Eagle Way Bypass
Hopkinsville, KY 42240

**2012-2597129-60.01**
Kentucky Secretary of State
File Date    8/22/2012 12:39:26 PM
Status       Active
Fee          $5.00

This document is a representation of a
filing made electronically at the
Kentucky Secretary of State's web site

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Cooke | Brandon | Lynn | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4501 S. Rte. 760 | Fredonia | KY | 42411 | USA |

| | e. TYPE OF ORGANIZATION | f. JURISDICTION OF ORGANIZATION | g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | | | NONE |

SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States of America acting through Farm Service Agency | | | |

| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3237 Eagle Way Bypass | Hopkinsville | KY | 42240 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All farm and other equipment and inventory, now owned or hereafter acquired by Debtor, together with all
replacements, substitutions and accessions thereto, including inventory, accounts and contract rights,
general intangibles and proceeds and products thereof, including all Federal or state subsidies and
entitlements in whatever form and from whatever source derived.

All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or
hereafter acquired by Debtor, together with all increases, replacements and additions thereto, including
inventory, accounts and contract rights, general intangibles and proceeds and products thereof, including all
Federal or state subsidies and entitlements in whatever form and from whatever source derived.

Exhibit G



## UCC FINANCING STATEMENT AMENDMENT

Name and address of filer:

USDA/Farm Service Agency
3237 Eagle Way Bypass
Hopkinsville, KY 42240

**2012-2597129-60.02**
**Kentucky Secretary of State**
File Date      8/16/2017 3:47:40 PM
Status        Active
Fee           $5.00

This document is a representation of a
filing made electronically at the
Kentucky Secretary of State's web site

INITIAL FINANCING STATEMENT FILE #

2012-2597129-60

Type of Amendment

Continuation

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

a. ORGANIZATION'S NAME
USDA/Farm Service Agency

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

## UCC FINANCING STATEMENT

| | |
|---|---|
| **2016-2816336-18.01** | |
| **Kentucky Secretary of State** | |
| File Date | 3/1/2016 1:56:45 PM |
| Status | Active |
| Fee | $5.00 |

Name and address of filer:

USDA/Farm Service Agency
3237 Eagle Way Bypass
Hopkinsville, KY 42240

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

**DEBTOR'S EXACT FULL LEGAL NAME**

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Brandon L Cooke** | | | |

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4501 State Route 70 | Fredonia | KY | 42411 | USA |

**SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)**

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **USDA/Farm Service Agency** | | | |

| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| c. MAILING ADDRESS | CITY | | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3237 Eagle Way Bypass | Hopkinsville | KY | 42240 | |

4. This FINANCING STATEMENT covers the following collateral:

All livestock produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, and additions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof including all Federal or State Subsidy and Entitlements in whatever form and from whatever source derived ..

All farm and other equipment, and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, and accessions thereto, including inventory, accounts and contract rights, general intangibles and proceeds and products thereof including all Federal or State Subsidy and Entitlements in whatever form and from whatever source derived.

*Exhibit H*

## UCC FINANCING STATEMENT AMENDMENT

Name and address of filer:

**USDA/Farm Service Agency**
**3237 Eagle Way Bypass**
**Hopkinsville, KY 42240**

**2016-2816336-18.02**
**Kentucky Secretary of State**
File Date    5/24/2018 10:14:05 AM
Status      Active
Fee         $5.00

**This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site**

INITIAL FINANCING STATEMENT FILE #

**2016-2816336-18**

Type of Amendment

**Change Debtor**

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Cooke | Brandon | L | |
| c. MAILING ADDRESS | CITY | POSTAL CODE | COUNTRY |
| 4501 State Route 70 | Fredonia | KY   42411 | USA |

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **USDA/Farm Service Agency** | | | |
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

BRANDON L. COOKE, ET AL.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   CALDWELL
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☑ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     another district
     (specify)

☐ 6  Multidistrict
     Litigation

☐ 7  Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $
$144,502.68

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE
10/23/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# United States District Court

<u>WESTERN</u>      **DISTRICT OF**      <u>KENTUCKY</u>

**AT PADUCAH**

United States of America           **SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Brandon L. Cooke, et al.

**TO:**    (Name & Address of Defendant)

        BRANDON L. COOKE
        4501 State Route 70
        Fredonia, KY 42411

    **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

        William F. Campbell
        Assistant U.S. Attorney
        United States Attorney's Office
        717 West Broadway
        Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____      _____
**CLERK**                                 DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant.  Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age
and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the
foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on    _____     _____
                     Date                                         Signature of Server

---

*1*    **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**